Good afternoon, your honors. My name is Jesse Thompson, and I represent petitioner Peter Namkaga the relatively simple question for this court is whether the Board of Immigration Appeals abused its discretion when it denied my client's motion to reopen his removal proceedings. That motion is based on a claim that he received ineffective assistance of counsel at the trial court. The two-pronged issue that is thus before your honors is, did Mr. Kaga receive an effective assistance of counsel, and if so, did that prejudice his chance of relief? To approach this question, I think the court may do best to narrow in on the board's decision that concluded that Mr. Kaga's prior attorney failed to perform basic research and investigation and to effectively communicate in the language that he understands. The board also then concluded that those obvious and fairly serious failures could not have prejudiced the outcome of the proceedings because Mr. Kaga presented inconsistent testimony. For a respondent in removal proceedings, an effective assistance of counsel is a violation of its constitutional due process rights. In order for hearings like this to be constitutionally sound, those due process rights must be preserved at all times. A court record, thus, that is produced in the course of a due process violation is per se unreliable. As the Constitution forbids tainted evidence to be used against the defendant in a criminal proceeding, it similarly must forbid the use of a constitutionally tainted evidentiary record against the respondent in removal proceedings. The board's decision seems to begin with the premise that Mr. Kaga's testimony was not credible, and also that this not-credible testimony was created in a vacuum outside the influence of the attorneys. You've submitted some new documents with your motion to reopen. How would the information in those documents, how would that information have affected the adverse credibility determination? Sure, Your Honor. I actually did not write the motion to reopen. There was another attorney, Christy White, who handled the intermediate appeal and that motion to reopen. But the records submitted with that motion to reopen include declarations from friends and family members that were actually written in French and then properly translated and presented with certificates of translation, which is what's required by the Immigration Court Practice Manual. The original declarations that were submitted by family members appeared to be written in English and were not translated at all. And none of the affiants actually speak English fluently to present evidence. So I frankly don't know where those original declarations came from or even if they were truly authored by the people who claimed to have offered them. The declarations submitted with the motion to reopen were the actual truth of the matter and they go a long way to support my client's testimony in the first place. So that's, I think, the strongest evidence that was submitted with the motion to reopen that would go a long ways to rehabilitate his testimony. But there was also more than 100 pages of news and country conditions evidence that was submitted as well that was very easily available and identifiable at the time of trial and prior to the first attorney did not submit any of that. So I think that those two sets of documents can be looked at as a subjective support of his testimony and then the news and country conditions evidence that were submitted would be objective support of the basis of his claim. Counsel, help me with a detail on what the BIA decision described as inconsistencies. Usually the word inconsistencies is used in these cases to refer to the asylum seeker testifying inconsistently with himself. So he says one thing one time, one thing another time. As I understand it, the inconsistencies here are with Kaga saying one thing and the country report saying another thing except for Kaga saying one thing and his wife saying another thing about whether she visited him. And then we've got a declaration that was submitted with the motion to reopen that says she didn't really say that she visited him after six months the way her earlier declaration says. She said she tried to, but I couldn't do the translation right. Something like that. Am I remembering that right? Sure, I think the clearest answer to that is to look sort of at the immigration judge's decision that concluded that there were four main issues in which the testimony or the judge found the testimony to be not credible. It was around the date of his and other coup suspects' arrests in Togo in April of 2009. Whether the petitioner was ever charged with the crime in connection with the coup attempt. Whether the Red Cross gained immediate access to the petitioner. Could you focus on my question about the inconsistencies? What was inconsistent with what? Sure, I was getting there. But basically the answer is that there was inconsistent testimony from the country conditions report compared to some of the questions that Mr. Kaga answered. And then there was inconsistent testimony that came from the wife's declaration. And so I think that there were both similar... Now on the wife's declaration, is my memory right that her declaration says I visited him in six months. He says she never was able to visit me. And then there's a later declaration, I think from the brother, saying the translation wasn't right. She didn't say she visited him in six months. That's correct. Have I got that right? Yes. Were there any inconsistencies where Kaga said one thing one time and another thing another time? There was not, to my knowledge, internal inconsistent testimony. So I don't know that there was necessarily an instance in which he testified or wrote something in a declaration and testified to it differently later. As you're right, that has happened in some cases. All right, so the issue that I see that's most important here, obviously, is that I believe that the constitutional issue and the constitutional violation of his due process rights is the premier issue that the board should be concerned with. And the decision spends most of its decision around three and a half pages analyzing the inconsistencies and less than a page on the motion to reopen and on the constitutional violation. Regulation does allow this. There is a regulation that allows the motion to reopen and the merits appeal to be decided at the same time. So the adjudicator in this case was abiding by the regulations by combining the adjudications. However, the way the decision was written, to me, does not make logical sense because it leaves the constitutional issue for sort of later and afterwards. And the board concludes that there was no prejudice because there was inconsistent testimony. And to me, I think it's very difficult to examine a case like this if you understand that there is a constitutional violation happening while the case is being presented. It's very hard to analyze whether the testimony and whether the record as a whole is consistent or is inconsistent. If there's no way to show that he is actually receiving the support of his attorney that he should, I think it's difficult to properly analyze whether or not his testimony is credible. And I think that the board almost concludes that there was ineffective assistance of counsel. It just fails to conclude that that ineffective assistance prejudiced the outcome of the case. Do we need to go to a deprivation of due process? Do we need to make a constitutional decision? Or can we determine that the BIA just abused its broad discretion when it denied the motion to reopen? This court may conclude that there was an abuse of discretion. I'm framing the issue as a constitutional issue to sort of forefront its amnesty. Well, it makes it a lot harder to go your way. And I'm curious whether we need to even reach that issue. You do not, Your Honor. The abuse of discretion is the standard for motions to reopen. And because this is a motion to reopen that's filed alleging ineffective assistance of counsel, this court need only find that the board abused its discretion to essentially restart the entire procedure and start the case over with a clean slate. Am I... Are we free to determine that the adverse credibility determination was not supported by evidence on the whole record without reaching ineffective assistance or alternatively deciding that there was ineffective assistance without reaching the adverse credibility determination? In the present posture of the case, if we were to decide to go your way, could we go either of those two ways? I believe so, Your Honor, because there was essentially two matters before the Board of Immigration Appeals, and one was the motion to reopen, and the second was the direct appeal of his asylum application. And the direct appeal of the asylum application is where the Board of Immigration Appeals and the immigration judge found that he could not be granted asylum because of his inconsistent testimony. So as there were two matters before the Board, there are simultaneously two matters before Your Honors, and you are correct to assume that this court may choose either direction if it was to reset this case. All right. Thank you, counsel. Thank you, Your Honors. Ms. Morrisey. Thank you, Your Honors. May it please the Court, my name is Kristen Morrisey appearing on behalf of the U.S. Attorney General. Your Honors, I think that the critical points in this case are that the agency's... first, that the agency's adverse credibility determination was supported by evidence. There were real inconsistencies between petitioners' claims. Help me on that. It looked like the inconsistencies were predominantly inconsistencies between what CAGA said and what the State Department country report said. Now, usually inconsistencies are where the asylum seeker says one thing one time, one thing another, but I don't recall there being any of those. Is that right? Your Honor is correct. Now, on the country report, I noticed that it was inconsistent with the United Nations report. And also, I thought, why would the people writing the country report be traveling to Togo and talking to all the witnesses just to find out what happened to some kitchen worker in the vice president's house? It just seems like, gosh, I can't see why they would focus that much on dates and details for a kitchen worker. It would be good enough for government work if it was close. Certainly, Your Honor. And the country reports don't make any discussions specifically of the kitchen worker or of Mr. CAGA. So why would the inconsistencies between what CAGA says and what the country report says matter? Well, Your Honor, I believe that they matter because they paint a very different picture from what Mr. CAGA contends happens to him and that they do discuss the treatment of all of the coup suspects and detail this specific event. I think most glaringly, petitioners claim that he was rounded up as a cook in the residence, rounded up with the other coup suspects and held for eight years without ever receiving a trial, without ever appearing before a judge and without ever being convicted is contrary to what's included in reports including Mr. CAGA's own reports that he submitted with his motion to reopen which specifically state that all of the coup suspects were charged with a list of specific crimes, that they received trials, that they were all convicted in September 2011, I believe. So the fact that this incident  including Mr. CAGA's own evidence and discusses this treatment makes the idea that he was treated so dramatically different from all of the other suspects that are discussed. But he was not a coup. He was not someone who he was the kitchen cook. He was not someone who was participating in this coup. Certainly that's his contention that he's wept up with everyone who is apparently an actual coup suspect as an apparently apparent coup suspect but treated so differently from everyone else who was rounded up in connection with this and held for 8 years with just nothing is implausible when you look at it with the documentation that was submitted and discusses this. Similarly an inconsistency What documentation? The State Department country reports the 2010 report You're talking about the country report. Yes and also I believe it was I was thinking this guy is such a small fry that it wouldn't be worth trying to charge him and prove the case and all that. Certainly and that could also imply that it's implausible that he would have been held for 8 years for anything in connection with this or treated as a suspect for this incident. Counsel Judge Gould if I could interject a question please. I'm having trouble understanding why a difference between what the country reports say and his testimony goes to his credibility. It seems like it's just that there's disputed evidence in the case but it doesn't say that anything in my mind about why why that makes him not credible. That's contrasted with plausibility or some other argument. Yes your honor and I it would be our position that it sort of goes to both. It's inconsistent with the evidence discussing the treatment of the detainees in connection with this specific arrest of these two suspects that it also does go to the plausibility of his claim of his contention which would go to the heart of his claims in this case and there were multiple points on which his claim about his treatment and his experience does vary from any discussion of the treatment of the individuals that were detained or arrested in connection with this alleged plot. I don't know counsel the way I read that report was that there were these 33 that were charged and arrested and for treason but he's not one of the 33. He was arrested on not on April 15 but on April 12 the first time they visited the president's brother's house and that seems perfectly plausible to me. Certainly your honor In any event that's not what the BIA held. They didn't say it was implausible this happened he made it adverse credibility determination. Yes your honor and the adverse credibility determination was based on an absence of any evidence discussing the claims that petitioner claimed happened to him in connection with this event. Another Oh sorry One thing that tainted that position of the BIA when I read it was that another part of the reason that they thought Kaga was lying struck me as stupid and the decision says that they couldn't possibly have sought to retaliate against him for filing a lawsuit on account of his wrongful imprisonment because their law says they don't do that and I thought yeah and our law says you don't jaywalk but people jaywalk and our law says you go 55 but a lot of people are going 65. I thought that was just stupid saying he must be lying because what he claims happened is not consistent with the law I mean it is not unheard of for police to not act perfectly consistently with what the law requires of them and because it seems stupid it for me tainted the rest of the decision on credibility. What am I missing here? Why isn't that stupid? Certainly Honor there can be a difference in what is allowed versus what actually happens and I certainly see your point in that regard to that point though I do think it's worth noting that not only do the reports discuss the general ability to file a complaint challenging detention or the conditions of detention but the reports again including Mr. Cargo's own reports that he submitted in support of his motion to remand discuss reports actually made by individuals who are arrested in connection with this event people did go and make complaints about their detention. They did challenge that. That was investigated it was referred to the commission of human rights. In Togo there was a publication about those complaints that did find those complaints credible and recommended compensation to those individuals and compensation was made to them about their treatment. I think the fact that again this event is extensively documented in evidence including petitioners own evidence that's on page 95 to 98 of the record and petitioners submitted UN working group paper that also on page 118 of the record in the amnesty international report the petitioner submitted along with the 2011 state department report which is at page 451. These reports discuss that not only could they but they did file complaints about this and those complaints were heard. They weren't rounded up for rearrest or sought out for murder as Mr. Cargo claimed he was for simply talking to a court clerk and leaving his own number. I think both the general ability to do so and the fact that the record shows that individuals were able to do so does contradict his claim that he was treated so immediately and so harshly without making a formal complaint and just visiting with a clerk on occasion. Thank you. Thank you your honors. Your honors I see that my time is nearly complete unless there are any other questions we would for the reasons outlined today and in respondents brief ask that this court find substantial evidence supports the agency's adverse credibility determination and denial of petitioner's claims and that the court did not abuse its broad discretion in denying the motion. All right. Thank you counsel. Cargo v. Garland will be submitted and we'll take up Figueroa v. Ducard.
judges: Kleinfeld, Wardlaw, Gould